UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SUPREME RICE, L.L.C.                                    CIVIL ACTION

VERSUS                                                  NO. 20-1212

TURN SERVICES, L.L.C.                                   SECTION M (5)

## ORDER & REASONS

Before the Court is a motion by third-party defendant SCF Marine Inc. ("SCF Marine") to dismiss or strike a Rule 14(c) tender made by third-party plaintiff Turn Services, L.L.C. ("Turn").[1]  Turn responds in opposition,[2] and SCF Marine replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying SCF Marine's motion to dismiss or strike the Rule 14(c) tender.

**I.  BACKGROUND**

This matter concerns damage to a shipment of rice.  On February 7, 2019, plaintiff Supreme Rice, L.L.C. ("Supreme Rice") entered into a contract with the United States Department of Agriculture ("USDA") to provide 12,666 metric tons of milled rice (the "Cargo"), valued at $5,810,940.00, for shipment to Conakry, Guinea.[4]  The purchase order provided that Supreme Rice was to deliver the Cargo to an ocean-going vessel in Myrtle Grove, Plaquemines Parish, Louisiana, sometime between April 4 and 14, 2019.[5]

---

[1] R. Doc. 10.
[2] R. Doc. 16.
[3] R. Doc. 20.
[4] R. Doc. 1 at 2.
[5] *Id.*

Supreme Rice entered into a contract under which SCF Marine provided seven hopper barges to transport the Cargo downriver to Myrtle Grove.[6] The contract contains the following forum-selection clause:

> The parties agree that … any dispute between Purchaser [USDA], Seller [Supreme Rice] and Consignee [SCF Marine] or any later Consignee, arising from or that relates in any way to this contract, or Seller's [Supreme Rice's] undertaking to transport the cargo that is the subject of this contract, or loss of or damage to the cargo, or any rights or obligations between or among Purchaser [USDA], Seller [Supreme Rice] and/or Consignee [SCF Marine] or any later Consignee regarding the cargo, shall be resolved in the federal court located in St. Louis unless otherwise agreed in writing.[7]

The barges were inspected, and then between March 15 and 26, 2019, the Cargo was loaded into them.[8] When the Cargo-laden barges arrived in Myrtle Grove, SCF Marine delivered them into the care, custody, and control of Turn at its barge-fleeting terminal for subsequent delivery to the ocean-going vessel for mid-stream loading operations.[9] There was no written fleeting contract between Supreme Rice and Turn, nor between SCF Marine and Turn.[10] During a pre-load survey, it was determined that the Cargo in three of SCF Marine's barges had become contaminated with foreign materials.[11]

On April 16, 2020, Supreme Rice filed this action against Turn pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[12] Supreme Rice alleges that it sustained a loss of $1,183,945.07 due to the damaged Cargo.[13] It further alleges that the Cargo damage was caused

---

[6] R. Doc. 5 at 8.
[7] R. Doc. 10-2 at 4.
[8] R. Doc. 1 at 2.
[9] *Id.*
[10] R. Doc. 5 at 9.
[11] R. Doc. 1 at 3.
[12] *Id.* at 4.
[13] *Id.* at 3.

by Turn's breach of contract, negligence, and gross negligence in breaching various obligations as a fleeter and bailee of the barges.[14]

In response to the suit, Turn filed an answer and third-party complaint bringing SCF Marine into the litigation as a third-party defendant.[15] Turn denies liability for Supreme Rice's alleged damages, and instead contends that SCF Marine bears the sole responsibility therefor.[16] Turn alleges that the seven barges were moored at its Myrtle Grove facility in the condition provided by Supreme Rice and SCF Marine, and that Turn never received any particularized instructions concerning the Cargo or the barges, nor were the barges damaged while in Turn's fleet.[17] Turn further alleges that SCF Marine was in control of the Cargo and provided unseaworthy barges which caused the alleged damage through SCF Marine's breach of contract, negligence, gross negligence, and breach of express or implied warranty.[18] Turn seeks indemnity and contribution from SCF Marine for any and all damages that Turn may sustain and for which Turn may be cast in judgment because of SCF Marine's actions.[19] Further, Turn tendered SCF Marine to Supreme Rice as a direct defendant pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.[20]

## II.   PENDING MOTION

SCF Marine argues that the Rule 14(c) tender must be dismissed under Rule 12(b)(3), 12(b)(6), or 12(f) of the Federal Rules of Civil Procedure, because "a Rule 14(c) tender cannot supersede SCF [Marine's] and Supreme Rice's binding forum selection clause that precludes Supreme Rice from suing SCF [Marine] on this claim anywhere other than the federal court in

---

[14] *Id.*
[15] R. Doc. 5.
[16] *Id.*
[17] *Id.* at 9-10.
[18] *Id.*
[19] *Id.* at 11-12.
[20] *Id.* at 12.

3

St. Louis.  In other words, … Rule 14(c) cannot provide a claim for a plaintiff that the plaintiff could not properly have pleaded itself."[21]  SCF Marine further argues that allowing Rule 14(c) to be used as a procedural backdoor to get around a valid forum-selection clause would deprive it of a part of its contractual bargain, and would encourage future plaintiffs to collude with future "friendly" defendants to use Rule 14(c) to avoid forum-selection clauses.[22]

In opposition, Turn reads SCF Marine's motion as being made under Rule 12(b)(6), and argues that the motion must be denied because: (1) Rule 12(b)(6) is not the proper mechanism to seek enforcement of a forum-selection clause; (2) Turn prevails if the pleadings are construed in its favor; and (3) the Court cannot consider the terms of a contract that was not attached to or specifically referenced in the pleading.[23]  Turn further argues that it is within the district court's discretion whether to allow the Rule 14(c) tender, and that dismissing it would be contrary to the intent underlying Rule 14(c) of avoiding duplicative litigation and judicial ineffciency.[24]  To that end, Turn argues that SCF Marine would not be prejudiced by proceeding on the Rule 14(c) tender in this jurisdiction because it must still litigate Turn's contribution-and-indemnity claims here.[25]  Turn is concerned that, if SCF Marine's motion "is granted, a single maritime contract

---

[21] R. Doc. 10-2 at 3; *see also id.* at 10-11.  Although SCF Marine contests the merits of Turn's third-party claim for contribution and indemnity, at this juncture, SCF Marine seeks dismissal of only the Rule 14(c) tender to Supreme Rice.  *Id.* at 8.

[22] *Id.* at 9-12.  Turn seeks to strike SCF Marine's references to collusion under Rule 11 of the Federal Rules of Civil Procedure, denying that it and Supreme Rice engaged in such behavior.  R. Doc. 16 at 9-10.  The motion to strike is DENIED.  SCF Marine does not claim that Turn and Supreme Rice colluded to use Rule 14(c) as an end-run around the forum-selection clause, but rather makes a general public policy argument that some hypothetical future plaintiff and defendant may do so if this Court does not grant its motion.

[23] R. Doc. 16 at 2-5.  SCF Marine authenticates and introduces into the record the contract through the affidavit of Rick Barbee, its vice president of marketing.  R. Doc. 10-2.  Turn moves to strike Barbee's affidavit and the contract arguing that neither the affidavit, nor the contract, was specifically made part of or central to Supreme Rice's complaint or Turn's third-party complaint; and thus, cannot be considered on a Rule 12(b)(6) motion to dismiss.  R. Doc. 16 at 4.  Because this Court does not analyze the motion under Rule 12(b)(6), the motion to strike is DENIED.

[24] R. Doc. 16 at 5-7.

[25] *Id.* at 8.

4

claim may be adjudicated in another jurisdiction and require the parties to participate in dual discovery and dual trials, which directly contradicts the intent of Rule 14."[26]

### III.   LAW & ANALYSIS

Rule 14(c) provides:

(c) Admiralty or Maritime Claim.

(1) *Scope of Impleader.* If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable – either to the plaintiff or to the third-party plaintiff – for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

(2) *Defending Against a Demand for Judgment for the Plaintiff.* The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

Fed. R. Civ. P. 14(c).

"That is, Rule 14(c) permits a defendant to implead a third-party defendant for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 242-43 (5th Cir. 2009) (citation omitted). The rule also "requires the third-party plaintiff (1) to assert an action sounding [in] admiralty or maritime, (3) that arises out of 'the same transaction, occurrence, or series of transactions or occurrences' as the plaintiff's original claim, and (3) over which the district court has jurisdiction." *Id.* at 243 (quoting Fed. R. Civ. P. 14(c)).

Because a Rule 14(c) tender proceeds as if the plaintiff had directly sued the defendant and the third-party defendant, the third-party defendant "can use any defenses available to it … against either the plaintiff or the defendant." *Galapagos Corporacion Turistica "Galatours"*

---

[26] *Id.*

5

*S.A. v. Panama Canal Comm'n*, 171 F. Supp. 2d 638, 642 n.5 (E.D. La. 2001); *see also* Fed. R. Civ. P. 82 (rules pertaining to admiralty cases, such as Rule 14(c), "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts"). Thus, the third-party defendant can assert a contractual forum-selection clause, notwithstanding its status as a third-party defendant. *GIC Servs., LLC v. Freightplus (USA) Inc.*, 2013 WL 6813878, at *1 (S.D. Tex. Dec. 24, 2013).

A motion to transfer under 28 U.S.C. § 1404(a) is the proper mechanism to enforce a valid forum-selection clause providing for venue in a different federal district.[27] *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Forum-selection clauses "are prima facie valid" in admiralty cases. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Under § 1404(a), "a forum selection clause [is] 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-60

---

[27] SCF Marine cites Rules 12(b)(3), 12(b)(6), and 12(f) as alternative bases for its motion. None is applicable. In *Atlantic Marine*, the Supreme Court explained that Rule 12(b)(3), and its companion, 28 U.S.C. § 1406(a), apply to a case filed in the "wrong" or "improper" venue pursuant to the venue rules, not to the enforcement of a forum-selection clause, because "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Atl. Marine*, 571 U.S. at 54-59. The regular venue provisions in 28 U.S.C. § 1391 do not apply in admiralty cases. *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. 1981); *see also* 28 U.S.C. § 1390(b) (the venue "chapter shall not govern the venue of a civil action in which the district court exercises the jurisdiction conferred by section 1333 [admiralty, maritime, and prize cases], except that such civil actions may be transferred between district courts as provided in this chapter"). Rather, in admiralty cases, the "venue and personal jurisdiction analyses merge," and venue for an action *in personam* "lies wherever valid service could have been made upon the defendant corporations." *McDonnell-Douglas,* 647 F.2d at 516. Neither SCF Marine, nor Turn, analyzes whether venue is improper in this Court under the admiralty rules; thus, Rule 12(b)(3) is inapplicable. Further, "the Fifth Circuit has never adopted a rule allowing enforcement of forum selection clauses through Rule 12(b)(6)." *Sultana Entm't, L.L.C. v. Gutierrez*, 740 F. App'x 81, 82 n.1 (citing *Atl. Marine*, 571 U.S. at 61, and refusing to determine whether dismissal under Rule 12(b)(6) is a valid mechanism to enforce a forum-selection clause). Finally, the Court is not aware of any post-*Atlantic Marine* authority supporting the notion that Rule 12(f), which permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," is a proper mechanism to enforce a forum-selection clause.

(quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).  In analyzing a § 1404(a) motion, a court gives no weight to the plaintiff's choice of forum, nor does it consider arguments about the parties' private interests.  *Id.* at 63-64.  Although the court may consider arguments about public-interest factors, "those factors will rarely defeat a transfer motion, [so] the practical result is that forum-selection clauses should control except in unusual case."  *Id.* at 64.

The forum-selection clause in the contract between Supreme Rice and SCF Marine requires that any dispute between the parties "arising from or that relates in any way to [the] contract" be litigated in the federal court in St. Louis.[28]  This broad forum-selection clause encompasses the contract and tort claims raised in this action.  *See Galatours*, 171 F. Supp. 2d at 641 ("courts reject the distinction between a suit in tort or for breach of contract for the purpose of circumventing a forum-selection clause in a binding contract") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88 (1991); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 221-22 (5th Cir. 1998)).

No party challenges the validity of the forum-selection clause, only its applicability to the Rule 14(c) tender.  Prior to *Atlantic Marine*, the district court in *Galatours* faced a situation identical to the one presented in this case.[29]  There, the court enforced the forum-selection clause and struck the Rule 14(c) tender, reasoning:

> While Rule 14(c) allows defendants to implead potentially liable third-party defendants in admiralty cases, it does not allow defendants to negate the previously bargained-for agreements between the tendered third-party defendant and the plaintiff.  Forum-selection clauses afford parties a higher-degree of predictability in their transactions and attempt to prevent pre-trial arguments over where to litigate.  Plaintiff … could not have initiated this action with [the third-party defendant] as a defendant.  Rule 14(c) requires that the litigation proceed as if the plaintiff had originally brought suit against the impleaded third-party defendant.  In this case, the litigation would not have proceeded with [the third-

---

[28] R. Doc. 10-2 at 4.
[29] Turn mistakenly argues that *Galatours* involved an arbitration clause. R. Doc. 16 at 8.  It did not.  The contract contained a forum-selection clause specifying that litigation, not arbitration, proceed in the Maritime Court of Panama.  *Galatours*, 171 F. Supp. 2d at 639 n.1.

7

> party defendant] as an original defendant because of the forum-selection clause between it and [plaintiff].

171 F. Supp. 2d at 643-44 (reaching this result after analogizing the situation to cases involving expired statutes of limitation and arbitration clauses because a Rule 14(c) tender cannot be used to accomplish what the plaintiff cannot do itself); *see also Ambraco*, 570 F.3d at 243 (another pre-*Atlantic Marine* case: approving the dismissal of a Rule 14(c) tender that was prohibited by a forum-selection clause, but allowing the third-party plaintiff's indemnity-and-contribution claims to proceed against the third-party defendant).[30]

Under the pre-*Atlantic Marine* jurisprudence, this Court may well have granted SCF's motion to dismiss under Rule 12(b)(3). However, *Atlantic Marine* teaches that a motion under § 1404(a) for transfer is now the proper mechanism to enforce a forum-selection clause. SCF did not make such a motion; thus, on the motion as presented, this Court cannot act to enforce the forum-selection clause. *See Atl. Marine*, 571 U.S. at 52 ("When a ***defendant files*** [a § 1404(a) motion] … a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.") (emphasis added). No party has requested that this Court sever the Rule 14(c) tender and transfer it to the United States District Court for the Eastern District of Missouri pursuant to § 1404(a) and the parties' forum-selection clause. Without such a motion and the benefit of the parties' briefing under the proper standard, the Court is unable at this time to determine whether this is one of the rare cases where the weight of the public-interest factors would lead the court to refuse transfer "'notwithstanding the counterweight of a forum-selection clause.'" *Id.* at 64 (quoting *Stewart*, 487 U.S. at 30-31).

---

[30] Turn also mistakenly argues that *Ambraco* involved an arbitration clause. R. Doc. 16 at 7. It did not. The contract contained a forum-selection clause specifying that litigation, not arbitration, proceed in England before the High Court of Justice in London. *Ambraco*, 570 F.3d at 236.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that SCF Marine's motion to strike (R. Doc. 10) is DENIED without prejudice to its seeking to enforce the forum-selection clause in the proper manner.

New Orleans, Louisiana, this 29th day of July, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE
