UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUPREME RICE, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 20-1212 |
| TURN SERVICES, L.L.C. | SECTION M (5) |

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by plaintiff Supreme Rice, L.L.C. ("Supreme Rice")[1] and defendant Turn Services, L.L.C. ("Turn"),[2] to which they each respond in opposition[3] and reply in further support of their own motions.[4] Also before the Court is a motion for summary judgment filed by third-party defendant SCF Marine, Inc. ("SCF Marine"),[5] to which third-party plaintiff Turn responds in opposition,[6] and SCF Marine replies in further support of its motion.[7] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying Supreme Rice's and Turn's cross-motions for summary judgment because there are disputed issues of material fact regarding whether Turn knew what was on the barges and what material contaminated the rice. The Court grants SCF Marine's motion for summary judgment on Turn's third-party complaint because suit was filed more than nine months after the incident, which is prohibited by SCF Marine's contract with Supreme Rice.

---

[1] R. Doc. 62.
[2] R. Doc. 57.
[3] R. Docs. 66 & 67. Third-party defendant SCF Marine, Inc. filed a response to Turn's motion for summary judgment to address some factual assertions made therein, but not to oppose the substance of the motion. R. Doc. 82.
[4] R. Docs. 83 & 84.
[5] R. Doc. 59.
[6] R. Doc. 69.
[7] R. Doc. 81.

I.  BACKGROUND

This matter concerns contamination of part of a shipment of long grain milled rice ("LGMR"). On February 7, 2019, Supreme Rice entered into a contract with the United States Department of Agriculture to provide 12,666 metric tons of LGMR, valued at $5,810,940.00.[8] The purchase order provided that Supreme Rice was to deliver the LGMR to an ocean-going vessel in Myrtle Grove, Plaquemines Parish, Louisiana, sometime between April 4 and 14, 2019, for shipment to Conakry, Guinea.[9]

Supreme Rice and SCF Marine entered into a contract under which SCF Marine provided seven hopper barges to transport the LGMR downriver to Myrtle Grove.[10] The barges all had barge covers and grain doors designed to protect the cargo from the weather, but to allow for air flow and ventilation to prevent mold growth and overheating.[11] Federal grain inspectors inspected the barges and found them fit to carry the cargo.[12] Between March 15 and 26, 2019, the LGMR was loaded onto the barges for transport downriver.[13]

Turn operates a barge fleeting facility on the east bank of the Mississippi River near Myrtle Grove that consists of a series of tiers where barges are parked side-by-side extending outward into the river.[14] The fleet is upriver from one coal/petcoke terminal and across the river from another.[15] When the barges carrying Supreme Rice's cargo arrived in Myrtle Grove on April 6, 2019, SCF Marine's subcontractor delivered them to Turn's fleet for later loading onto the ocean-going vessel.[16] Prior to delivery of the barges to Turn, SCF Marine sent an email to Turn's

---

[8] R. Doc. 1 at 2.
[9] Id.
[10] Id.
[11] R. Doc. 62-1 at 3.
[12] Id. (citing R. Doc. 62-7).
[13] R. Doc. 1 at 2.
[14] R. Docs. 57-1 at 1; 62-1 at 3-4.
[15] R. Doc. 57-1 at 2.
[16] Id. at 2-3.

dispatcher stating that the barges contained "LGMR."[17] Turn disputes whether it received the email and whether its representatives understood that "LGMR" is an acronym for long grain milled rice.[18] Turn inspected the barges, accepted them into the fleet, and was paid for its fleeting services.[19] Three of the barges were placed in the upriver section of the fleet next to seven uncovered barges that Supreme Rice asserts were loaded with coal/petcoke.[20] Turn claims the seven barges in question were loaded with petcoke, not coal.[21] Due to a prior instance of cargo contamination, Turn has a standing order that is reissued to its fleet boat captains ever twelve hours instructing them not to put milled rice barges close to coal barges.[22] There was no written fleeting contract between Supreme Rice and Turn, nor between SCF Marine and Turn.[23]

On April 17, 2019, surveyors from Russel Marine Group ("RMG"), working on Supreme Rice's behalf, inspected the LGMR cargo prior to transloading to the ocean-going vessel.[24] The RMG surveyors discovered that the cargo in the three barges that were moored near the coal/petcoke barges was contaminated with black dust.[25] Based on their contemporaneous observations, the RMG surveyors opined that the black dust was coal dust blown by the wind from the nearby uncovered coal/petcoke barges which entered the SCF Marine barges through gaps in the barges' hopper covers and coaming.[26]

On April 19, 2019, Michael Lagasse, a marine surveyor, was at Turn's fleet performing another job for Turn when Turn's claims manager, David Bullard, asked him to inspect the

---

[17] R. Doc. 62-12.
[18] R. Doc. 67 at 14-19.
[19] R. Doc. 62-1 at 5 (citing R. Docs. 62-13 & 62-17)
[20] *Id.* (citing R. Doc. 62-14).
[21] R. Doc. 67 at 16-18.
[22] R. Doc. 62-1 at 4 (citing R. Doc. 62-25).
[23] R. Doc. 5 at 9.
[24] R. Doc. 57-1 at 3.
[25] R. Doc. 62-1 at 5 (citing R. Docs. 62-15 & 62-16).
[26] *Id.* (citing R. Docs. 62-15 & 62-16).

contaminated SCF Marine barges.[27] Lagasse reported to Bullard via email that the "it appears that fleeted open hopper barges of pet coke in the near vicinity are blowing a very fine black dust onto nearby barges causing the contamination."[28] At his deposition, Lagasse testified that he did not see any black dust contamination on barges downriver from the SCF Marine barges at issue.[29] Subsequent testing indicated that the contaminant in Supreme Rice's cargo was likely green delayed petcoke, coal tar pitch, or both.[30]

On April 16, 2020, Supreme Rice filed this action against Turn pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[31] Supreme Rice alleges that it sustained a loss of $1,183,945.07 due to the damaged LGMR cargo.[32] After making deductions for salvage, Supreme Rice seeks $1,071,827.49 in damages from Turn.[33] Supreme Rice further alleges that the cargo damage was caused by Turn's breach of contract, negligence, gross negligence, and want of due care and/or fault in breaching various obligations as a fleeter and bailee of the barges.[34]

In response to the suit, Turn filed an answer and third-party complaint bringing SCF Marine into the litigation as a third-party defendant.[35] Turn denies liability for Supreme Rice's alleged damages and instead contends that SCF Marine bears sole responsibility.[36] Turn alleges that the seven barges were moored at its Myrtle Grove facility in the condition provided by Supreme Rice and SCF Marine, and that Turn never received any specific instructions concerning the cargo or

---

[27] *Id.* (citing R. Doc. 62-17).
[28] R. Doc. 62-26.
[29] R. Doc. 62-1 at 6 (citing R. Doc. 62-17).
[30] *Id.* (citing R. Doc. 62-20).
[31] R. Doc. 1.
[32] *Id.* at 3.
[33] R. Doc. 62-1 at 11.
[34] R. Doc. 1 at 3.
[35] R. Doc. 5.
[36] *Id.*

4

the barges.[37] Turn further alleges that SCF Marine was in control of the cargo and provided barges that were unseaworthy due to their open air vents which caused the alleged damage to the cargo through SCF Marine's breach of contract, negligence, gross negligence, and breach of express or implied warranty.[38] Turn seeks indemnity and contribution from SCF Marine for any and all damages for which Turn may be cast in judgment because of SCF Marine's actions.[39] Further, Turn tendered SCF Marine to Supreme Rice as a direct defendant pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.[40] SCF Marine responded and stated a counterclaim against Turn for contribution and indemnity and costs and attorney's fees.[41]

## II.  PENDING MOTIONS

### A. Supreme Rice's and Turn's Cross-Motions for Summary Judgment

Supreme Rice seeks summary judgment on its claims against Turn, arguing that a bailment relationship was established when the barges were delivered to Turn making Turn, as the fleeter, responsible for the care of the barges, including ensuring that they were properly moored, a duty which Turn breached.[42] Supreme Rice contends that the evidence shows that it delivered to Turn seaworthy barges containing undamaged LGMR cargo.[43] Supreme Rice argues that Turn, against its own policy, improperly moored three of those barges, which it knew contained LGMR, next to open hopper barges containing coal/petcoke that was blown by the wind to contaminate the LGMR

---

[37] *Id.* at 9.
[38] *Id.* at 9-10.
[39] *Id.* at 11-12.
[40] *Id.* at 12.
[41] R. Doc. 28 at 11-12. SCF Marine also stated a number of defenses and breach-of-contract claims against Supreme Rice to the extent that Supreme Rice accepted Turn's Rule 14(c) tender and pursued direct claims against SCF Marine. *Id.* at 9-11. Supreme Rice has not accepted the tender, nor has it pursued direct claims against SCF Marine.
[42] R. Doc. 62-1 at 8-11. Supreme Rice makes these same arguments in opposition to Turn's motion for summary judgment. *See* R. Doc. 66.
[43] R. Doc. 62-1 at 8-11.

cargo.[44] According to Supreme Rice, because Turn knew that coal/petcoke could contaminate LGMR, Turn cannot show that it exercised due care in the placement of the barges near a known contaminate.[45] Thus, says Supreme Rice, Turn breached the bailment relationship and acted negligently.[46]

In support of its own cross-motion for summary judgment, and in opposition to Supreme Rice's motion, Turn argues that, as a fleeter, its obligation was only to ensure that the barges were adequately moored so that they did not break away, sink, or sustain hull damage.[47] Turn argues that it had no written contract with Supreme Rice or SCF Marine and neither provided Turn with any specific instruction regarding how the barges should be fleeted.[48] Turn disputes both that it received any email indicating the barges contained LGMR and that its employees knew what the acronym "LGMR" meant.[49] Turn further argues that its bailment obligation was limited because the owner still had access to the barges and cargo; thus, says Turn, it was not responsible for the cargo.[50] According to Turn, it properly discharged its duty as a limited bailee because the barges did not break away, sink, or sustain hull damage, and it owed no duty to insure the cargo.[51]

Turn also argues that SCF Marine had the duty to protect the cargo because it contracted to move the cargo in covered barges and that SCF Marine breached this duty by providing barges with covers and doors that were not airtight.[52] Turn contends that the non-airtight covers and doors

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] R. Docs. 57-1 at 5-10; 67 at 1-3.
[48] R. Docs. 57-1 at 5-10; 67 at 1-3.
[49] R. Doc. 67 at 13-16.
[50] R. Docs. 57-1 at 5-10; 67 at 1-3.
[51] R. Docs. 57-1 at 5-10; 67 at 1-3.
[52] R. Doc. 57-1 at 10-11.

rendered the barges unseaworthy because they were not fit for the intended purpose of protecting the LGMR cargo.[53]

Further, Turn argues that Supreme Rice cannot prove the source of the contamination because it did not take samples of the material on the open hopper barges for comparison to the contaminant found on the LGMR barges.[54] According to Turn, the contaminant could just have easily come from the nearby coal/petcoke facilities or some other place, and Supreme Rice cannot definitively prove the source without having done a comparison analysis.[55] Moreover, Turn argues that the contaminant was coal, not petcoke, and the nearby barges contained petcoke, not coal, so they could not have been the source and Turn did not violate its standing order by placing milled rice next to coal.[56]

**B. SCF Marine's Motion for Summary Judgment Against Turn**

SCF Marine seeks summary judgment on Turn's third-party and Rule 14(c) tender claims, arguing that those claims are precluded by SCF Marine's contract with Supreme Rice.[57] SCF Marine argues that Turn, by asserting claims for contribution and indemnity and a Rule 14(c) tender, is limited to recovering only what Supreme Rice would be able to recover if it had sued SCF Marine directly (which it has not).[58] Specifically, SCF Marine points to the contract's limitations period which requires claims to be filed within nine months of the loss.[59] This case was filed almost one year after the loss and SCF Marine was impleaded even later.[60] Also, under the contract, Supreme Rice warrants that SCF Marine provided seaworthy barges, which it says is

---

[53] R. Doc. 67 at 12-13.
[54] *Id.* at 4-11.
[55] *Id.*
[56] *Id.* at 4-11 & 16-18.
[57] R. Doc. 59.
[58] R. Doc. 59-1 at 11-13.
[59] *Id.* at 11-12.
[60] *Id.*

7

an admission that the barges were indeed seaworthy.[61] Further, the contract precludes recovery against SCF Marine for cargo loss that occurs after the barges reach their destination which is defined to include placement with a fleeter in anticipation of unloading.[62] In addition to these contractual defenses, SCF Marine argues that it cannot be held liable because there is no evidence that the barges were unseaworthy.[63] SCF Marine asks the Court to exercise its inherent power to sanction Turn for pursuing what it deems frivolous claims by imposing an award of attorney's fees.[64]

In opposition, Turn argues that the barges were unseaworthy because the covers and doors were not airtight, that SCF Marine cannot delegate its duty to provide seaworthy barges, that the source of contamination cannot be confirmed, that Turn did not know that the barges contained LGMR, and that it did not violate its standing order with respect to the placement of the barges.[65] Turn urges that SCF Marine's contractual defenses are not applicable because the contract was between SCF Marine and Supreme Rice, not Turn.[66] Finally, Turn argues that sanctions are not appropriate because its claims are not frivolous.[67]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates

---

[61] *Id.* at 12-13.
[62] *Id.* at 13.
[63] *Id.* at 13-17.
[64] *Id.* at 17-20.
[65] R. Doc. 69.
[66] *Id.*
[67] *Id.* at 23.

8

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual

controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Analysis of Supreme Rice's and Turn's Cross-Motions for Summary Judgment**

When a barge is delivered to a fleeter, a bailment relationship is established, and the fleeter as bailee has a duty to exercise reasonable care of the barge. *See Dow Chem. Co. v. Barge UM-23B*, 424 F.2d 307, 311 (5th Cir. 1970) (wharfinger was "a bailee for hire"); *Am. River Transp. Co. v. Paragon Marine Servs., Inc.*, 213 F. Supp. 2d 1035, 1059 (E.D. Mo. 2002) ("A bailment obligates the bailee to exercise ordinary care to protect the subject of the bailment."). "A fleeter is responsible for the care of barges in its custody, and that includes a duty to ensure that the barges are adequately moored." *Conagra, Inc. v. Weber Marine, Inc.*, 2000 WL 943198, at *5 (E.D. La. July 7, 2000) (citing *John I. Hay Co. v. The Allen B. Wood*, 121 F. Supp. 704, 708 (E.D. La. 1954), *aff'd*, 219 F.2d 237 (5th Cir. 1955)); *see also Am. River Transp.*, 213 F. Supp. 2d at 1059 ("The

operator of a fleeting facility as bailee has the responsibility of caring for a barge after it is committed to its custody."). A barge owner or operator surrendering custody and control of its barges to a fleeter, relies on that fleeter's expertise to care for the barges as the party in the best position to prevent accidents. *Dow Chem.*, 424 F.2d at 311-12. The fleeter's duties to the barges in its custody include ensuring adequate mooring at all times, being able to keep a constant watch on the mooring lines, and remooring barges properly and maintaining proper mooring on them thereafter. *Jantran, Inc. v. M/V Sandra W*, 1994 WL 1890905, at *4-5 (N.D. Miss. Dec. 2, 1994) (citations omitted).

The bailor, *i.e.*, the barge owner or operator, bears the burden of proof on a claim for negligence. *Stegemann v. Miami Beach Boat Slips, Inc.*, 213 F.2d 561, 564 (5th Cir. 1954). The bailor establishes a *prima facie* case of negligence by proving that the barge was delivered to the bailee, *i.e.*, the fleeter, in good condition and damaged while in the fleeter's possession. *Id.* The burden of proof then shifts to the bailee to prove affirmatively that it exercised ordinary care over the barge. *Id.* (citing *Southern Ry. Co. v. Prescott*, 240 U.S. 632 (1916)).

With respect to the first element, the good condition of the barge, "[a] barge owner has a 'continuing and nondelegable duty' to deliver a seaworthy barge to a fleeter." *Conagra*, 2000 WL 943198, at *4 (citation omitted). An unseaworthy vessel is one that is not "reasonably fit and safe for the purposes for which it is to be used." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)).

Here, the undisputed evidence shows that the barges in question were seaworthy. The contract between Supreme Rice and SCF Marine specified that Supreme Rice would inspect the barges before loading, and not commence loading, until Supreme Rice was satisfied with the

11

barges' seaworthy condition.[68] To that end, prior to loading, federal grain inspectors inspected the barges and found them fit to carry the cargo.[69] Moreover, Turn inspected the barges and found them acceptable prior to admitting them into the fleet.[70] Turn argues, however, that the barges were unseaworthy, *i.e.*, not fit for their intended purpose (which it says was to protect the cargo as opposed to transporting it), because the covers and doors were not airtight. This argument is without merit. The undisputed evidence shows that the federal grain inspectors found the barges adequate to transport the LGMR, and Turn points to no evidence that disputes Supreme Rice's assertion that the barge covers and grain doors were intended to protect the cargo from the weather while allowing airflow to prevent mold and overheating. Thus, there is no evidence that the barges were unseaworthy.

Now that Supreme Rice has established that the barges, and their cargo, were delivered to Turn in good condition, the burden shifts to Turn to demonstrate that it was not negligent or did not breach a duty owed. It is undisputed that Turn did not breach the traditional duties of a fleeter – namely, preventing the barges from sinking, breaking away, or sustaining hull damage. None of those casualties occurred. However, this case poses a broader question: whether a fleeter's duty to ensure adequate mooring extends to the placement of the barges within the fleet so as to protect their cargo from contamination. The parties do not cite, and the Court's independent research has not uncovered, any case that resolves the question. The jurisprudence speaks in broad terms of a fleeter's duty to exercise ordinary care over the barges as the party in the best position to prevent accidents. *See, e.g., Dow Chem.*, 424 F.2d at 311-12; *Am River Transp.*, 213 F. Supp. 2d at 1059.

---

[68] R. Doc. 28-1 at 2.
[69] R. Doc. 62-1 at 3 (citing R. Doc. 62-7).
[70] *Id.* at 5 (citing R. Docs. 62-13 & 62-17)

Here, Turn had a policy (memorialized in a standing order) of not placing milled rice barges near coal barges because it knew from prior experience that coal dust could damage the rice. This policy amounts to an acknowledgment by Turn that it had a duty to avoid placing barges (at least, milled rice barges) within the fleet in a position (near coal barges) that presented a known risk to the cargo. Although Turn is not providing a blanket assurance as to the cargo's condition, it is undertaking the duty to avoid knowingly placing the cargo in harm's way by mooring it in an unsafe location within the fleet. However, at this stage of the case, this is as far as the Court can go. There are disputed issues of material fact regarding whether Turn knew that the barges contained LGMR and whether the rice was contaminated by coal or coal-like dust from a nearby barge. Thus, although the Court recognizes that Turn's duty to adequately care for the barges includes in the circumstance of this case (including, particularly, Turn's standing order) a duty to position the barges in a proper place within the fleet to protect the rice cargo from contamination from nearby coal barges, it cannot determine on the summary-judgment record before it whether Turn breached that duty by knowingly placing LGMR next to barges loaded with coal or a coal-like substance that could potentially damage the rice. Accordingly, Supreme Rice and Turn's cross-motions for summary judgment are both denied.

### C. Analysis of SCF Marine's Motion for Summary Judgment

In its motion for summary judgment, SCF Marine asserts several contractual defenses, including a time bar, that Turn dismisses as irrelevant because the contract was between SCF Marine and Supreme Rice, not Turn.[71] Turn's claims against SCF Marine are premised on a Rule 14(c) tender and contribution/indemnity. Rule 14(c) was designed to expedite and consolidate

---

[71] Given this position, Turn fails to address the merits of the time bar in its opposition memorandum. Thus, Turn has waived any other opposition to the time bar. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.").

admiralty actions by permitting a third-party plaintiff (Turn) to demand judgment against a third-party plaintiff (SCF Marine) in favor of a plaintiff (Supreme Rice). In this way, the plaintiff (Supreme Rice) is deemed to have asserted the claims directly against the third-party defendant (SCF Marine). And SCF Marine's liability to Turn is determined by the extent to which it could be directly liable to Supreme Rice. *See* Fed. R. Civ. P. 14(c). Any such liability is governed by the contract between SCF Marine and Supreme Rice. This is also true as to the indemnity claim. SCF Marine's contract with Supreme Rice has a nine-month time bar, and this case was undisputedly filed beyond that temporal limit. Thus, because SCF Marine would have the right under the contract to assert the time bar to defeat any claim brought against it by Supreme Rice, *see Durgin v. Crescent Towing & Salvage, Inc.*, 2002 WL 1789776 (E.D. La. July 31, 2002) (dismissing a third-party complaint and Rule 14(c) tender as untimely filed when direct claim was time barred), SCF Marine is entitled to summary judgment on Turn's Rule 14(c) and indemnity claims against it. And because the SCF Marine barges were seaworthy, SCF Marine is entitled to summary judgment on Turn's contribution claim against it.[72]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Supreme Rice's motion for summary judgment (R. Doc. 62) is DENIED.

IT IS FURTHER ORDERED that Turn's motion for summary judgment (R. Doc. 57) is DENIED.

---

[72] The Court declines to exercise its inherent authority to impose any sanctions against Turn for bringing the Rule 14(c) tender against SCF Marine. Further, SCF Marine filed a motion to strike the affidavit of Jeffrey Griswold which Turn attached to its opposition to SCF Marine's motion for summary judgment. R. Doc. 86. Because this Court did not need to consider Griswold's affidavit in ruling on the underlying motion for summary judgment, the motion to strike is DENIED AS MOOT.

IT IS FURTHER ORDERED that SCF Marine's motion for summary judgment (R. Doc. 59) is GRANTED, and Turn's claims against SCF Marine and the Rule 14(c) tender are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 24th day of June, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE