UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SUPREME RICE, L.L.C.                                        CIVIL ACTION

VERSUS                                                            NO. 20-1212

TURN SERVICES, L.L.C.                                   SECTION M (5)


**ORDER & REASONS**

Before the Court is a trial brief filed by third-party defendant SCF Marine, Inc. ("SCF Marine") seeking attorney's fees and costs.[1] Plaintiff Supreme Rice, L.L.C. ("Supreme Rice") and third-party plaintiff Turn Services, L.L.C. ("Turn") each file trial briefs in opposition,[2] and SCF Marine replies in further support of its position.[3] Having considered the parties' briefs and submitted evidence, the record, and the applicable law, the Court issues this Order & Reasons finding that SCF Marine is not entitled to attorney's fees from either Supreme Rice or Turn.[4] The Court issues its Order & Reasons pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such, and vice versa.

**I.   BACKGROUND**

This matter concerns contamination of part of a shipment of long grain milled rice ("LGMR"). On February 7, 2019, Supreme Rice entered into a contract with the United States Department of Agriculture ("USDA") to provide 12,666 metric tons of LGMR, valued at

---

[1] R. Doc. 100.
[2] R. Docs. 104 & 106.
[3] R. Doc. 112.
[4] Pursuant to Local Rules 54.3 and 54.3.1, the Court leaves the determination of costs to the Clerk of Court upon SCF Marine's motion made in accordance with those rules.

$5,810,940.00.[5]  The purchase order provided that Supreme Rice was to deliver the LGMR to an ocean-going vessel in Myrtle Grove, Plaquemines Parish, Louisiana, sometime between April 4 and 14, 2019, for shipment to Conakry, Guinea.[6]

Supreme Rice and SCF Marine entered into a contract under which SCF Marine provided seven hopper barges to transport the LGMR downriver to Myrtle Grove.[7]  The barges all had barge covers and grain doors designed to protect the cargo from the weather, but to allow for air flow and ventilation to prevent mold growth and overheating.[8]  Federal grain inspectors inspected the barges and found them fit to carry the cargo.[9]  Between March 15 and 26, 2019, the LGMR was loaded onto the barges for transport downriver.[10]

Turn operates a barge fleeting facility on the east bank of the Mississippi River near Myrtle Grove, Louisiana, that consists of a series of tiers where barges are parked side-by-side extending outward into the river.[11]  The fleet is upriver from one coal/petcoke terminal and across the river from another.[12]  When the barges carrying Supreme Rice's cargo arrived in Myrtle Grove on April 6, 2019, SCF Marine's subcontractor delivered them to Turn's fleet for later loading onto the ocean-going vessel.[13]  Prior to delivery of the barges to Turn, SCF Marine sent an email to Turn's dispatcher stating that the barges contained "LGMR."[14]  Turn disputes whether it received the email and whether its representatives understood that "LGMR" is an acronym for long grain milled rice.[15]  Turn inspected the barges, accepted them into the fleet, and was paid for its fleeting

---

[5] R. Doc. 1 at 2.
[6] *Id.*
[7] *Id.*
[8] R. Doc. 62-1 at 3.
[9] *Id.* (citing R. Doc. 62-7).
[10] R. Doc. 1 at 2.
[11] R. Docs. 57-1 at 1; 62-1 at 3-4.
[12] R. Doc. 57-1 at 2.
[13] *Id.* at 2-3.
[14] R. Doc. 62-12.
[15] R. Doc. 67 at 14-19.

services.[16]  Three of the barges were placed in the upriver section of the fleet next to seven uncovered barges that Supreme Rice asserts were loaded with coal/petcoke.[17]  Turn claims the seven barges in question were loaded with petcoke, not coal.[18]  Due to a prior instance of cargo contamination, Turn has a standing order that is reissued to its fleet boat captains every twelve hours instructing them not to put milled rice barges close to coal barges.[19]  There was no written fleeting contract between Supreme Rice and Turn, nor between SCF Marine and Turn.[20]

On April 17, 2019, surveyors from Russel Marine Group ("RMG"), working on Supreme Rice's behalf, inspected the LGMR cargo prior to transloading to the ocean-going vessel.[21]  The RMG surveyors discovered that the cargo in the three barges that were moored near the coal/petcoke barges was contaminated with black dust.[22]  Based on their contemporaneous observations, the RMG surveyors opined that the black dust was coal dust that blew with the winds from the nearby uncovered coal/petcoke barges and entered through gaps in the barges' hopper covers and coaming.[23]

On April 19, 2019, Michael Lagasse, a marine surveyor, was at Turn's fleet performing another job for Turn when Turn's claims manager, David Bullard, asked him to inspect the contaminated SCF Marine barges.[24]  Lagasse reported to Bullard via email that "it appears that fleeted open hopper barges of pet coke in the near vicinity are blowing a very fine black dust onto nearby barges causing the contamination."[25]  At his deposition, Lagasse testified that he did not

---

[16] R. Doc. 62-1 at 5 (citing R. Docs. 62-13 & 62-17).
[17] *Id.* (citing R. Doc. 62-14).
[18] R. Doc. 67 at 16-18.
[19] R. Doc. 62-1 at 4 (citing R. Doc. 62-25).
[20] R. Doc. 5 at 9.
[21] R. Doc. 57-1 at 3.
[22] R. Doc. 62-1 at 5 (citing R. Docs. 62-15 & 62-16).
[23] *Id.* (citing R. Docs. 62-15 & 62-16).
[24] *Id.* (citing R. Doc. 62-17).
[25] R. Doc. 62-26 at 2.

see any black dust contamination on barges downriver from the SCF Marine barges at issue.[26] Subsequent testing indicated that the contaminate in Supreme Rice's cargo was likely green delayed petcoke, coal tar pitch, or both.[27]

On April 16, 2020, Supreme Rice filed this suit against Turn pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[28] Supreme Rice alleged that it sustained a loss of $1,183,945.07 due to the damaged LGMR cargo.[29] After making deductions for salvage, Supreme Rice sought $1,071,827.49 in damages from Turn.[30] Supreme Rice further alleged that the cargo damage was caused by Turn's breach of contract, negligence, gross negligence, and want of due care and/or fault in breaching various obligations as a fleeter and bailee of the barges.[31]

In response to the suit, Turn filed an answer and third-party complaint bringing SCF Marine into the litigation as a third-party defendant.[32] Turn denied liability for Supreme Rice's alleged damages and instead contended that SCF Marine had the sole responsibility for them.[33] Turn alleged that the seven barges were moored at its Myrtle Grove facility in the condition provided by Supreme Rice and SCF Marine, and that Turn never received any particularized instructions concerning the cargo or the barges.[34] Turn further alleged that SCF Marine was in control of the cargo and provided barges that were unseaworthy due to their open air vents which caused the alleged damage to the cargo through SCF Marine's breach of contract, negligence, gross

---

[26] R. Doc. 62-1 at 6 (citing R. Doc. 62-17).
[27] *Id.* (citing R. Doc. 62-20).
[28] R. Doc. 1.
[29] *Id.* at 3.
[30] R. Doc. 62-1 at 11.
[31] R. Doc. 1 at 3.
[32] R. Doc. 5.
[33] *Id.*
[34] *Id.* at 9.

4

negligence, and breach of express or implied warranty.[35] Turn sought indemnity and contribution from SCF Marine for any and all damages for which Turn may have been cast in judgment because of SCF Marine's actions.[36] Further, Turn tendered SCF Marine to Supreme Rice as a direct defendant pursuant to Rule 14(c) of the Federal Rules of Civil Procedure.[37]

On June 30, 2020, SCF Marine moved to strike or dismiss Turn's Rule 14(c) tender, arguing that it violated the forum-selection clause in SCF Marine's contract with Supreme Rice, which specified that any dispute regarding the cargo would be resolved in the federal court located in St. Louis.[38] Turn opposed the motion.[39] In ruling on the motion, this Court recognized that because a Rule 14(c) tender proceeds as if the plaintiff had directly sued the defendant and third-party defendant, the third-party defendant "can use any defenses available to it … against either the plaintiff or the defendant."[40] Although the Court held that the forum-selection clause was valid, it denied the motion to strike or dismiss because the proper mechanism to enforce it would have been a motion to transfer under 28 U.S.C. § 1404(a), not a motion to strike or dismiss.[41]

After this Court denied SCF Marine's motion to strike or dismiss, SCF Marine filed an amended answer in which it stated a breach-of-contract claim against Supreme Rice seeking attorney's fees to the extent that Supreme Rice accepted Turn's Rule 14(c) tender and pursued direct claims against SCF Marine.[42] SCF Marine cited eight potential contractual breaches by Supreme Rice, including Supreme Rice's agreements with SCF Marine: to hold it harmless, and

---

[35] *Id.* at 9-10.
[36] *Id.* at 11-12.
[37] *Id.* at 12.
[38] R. Doc. 10.
[39] R. Doc. 16.
[40] R. Doc. 21 at 5 (quoting *Galapagos Corporacion Turistica "Galatours" S.A. v. Panama Canal Comm'n*, 171 F. Supp. 2d 638, 642 n.5 (E.D. La. 2001); citing Fed. R. Civ. P. 82).
[41] *Id.* at 7-8. The Court denied the motion without prejudice to SCF Marine's right to enforce the forum-selection clause in the proper manner. *Id.* at 9.
[42] R. Doc. 28 at 9-11.

5

to defend and indemnify it; that Supreme Rice would inspect the barges before loading to ensure seaworthiness; and that any suit against SCF Marine be brought within nine months after the loss or damage occurred.[43] Supreme Rice insists that it did not accept the tender or pursue direct claims against SCF Marine.[44]

The parties then participated in discovery. Fifteen depositions were held, twelve of which were noticed by SCF Marine.[45] In fact, SCF Marine was required to obtain permission from the magistrate judge to take the last two of these depositions of additional marine surveyors.[46]

After thorough discovery and shortly before its close, Turn and Supreme Rice filed cross-motions for summary judgment.[47] Supreme Rice argued that it gave to Turn seaworthy barges that contained undamaged LGMR cargo, and that Turn, the fleeter, breached its duty to ensure that the barges were properly moored because they were placed next to barges that contained coal/petcoke in violation of Turn's internal policy of not placing LGMR next to a known contaminant.[48] Thus, said Supreme Rice, Turn breached the bailment relationship and acted negligently.[49]

Turn, on the other hand, argued that, as a fleeter, its obligation was only to ensure that the barges were adequately moored so that they did not break away, sink, or sustain hull damage, and that it had no duty, legal or contractual, to fleet the barges in any particular place.[50] Turn also disputed that it knew the barges contained LGMR or what that acronym meant, and the source of the contamination.[51] Turn further argued that SCF Marine had the duty to protect the cargo

---

[43] *Id.* at 10-11.
[44] R. Doc. 106 at 2.
[45] R. Doc. 104 at 2-3.
[46] *Id.*
[47] R. Docs. 57 & 62, respectively.
[48] R. Doc. 62-1 at 8-12. Supreme Rice made these same arguments in opposition to Turn's motion for summary judgment. *See* R. Doc. 66.
[49] *Id.*
[50] R. Docs. 57-1 at 5-10; 67 at 1-3.
[51] R. Docs. 57-1 at 4-11 & 16-18; 67 at 13-16.

because it contracted to move the cargo in covered barges and that SCF Marine breached this duty by providing barges with covers and doors that were not airtight, rendering the barges susceptible to contamination, and thus unseaworthy for failing to protect the LGMR cargo.[52]

SCF Marine also moved for summary judgment on Turn's third-party and Rule 14(c) tender claims, arguing that those claims were precluded by SCF Marine's contract with Supreme Rice which required claims to be filed within nine months of the loss.[53] This case was filed almost one year after the loss and SCF Marine was impleaded even later.[54] Also, under the contract, argued SCF Marine, Supreme Rice warranted that SCF Marine provided seaworthy barges and the contract precluded recovery against SCF Marine for cargo loss that occurs after the barges were placed with a fleeter in anticipation of unloading.[55] In addition to these contractual defenses, SCF Marine argued that it could not be held liable because there was no evidence that the barges were unseaworthy.[56] SCF Marine asked the Court to exercise its inherent power to sanction Turn for pursuing what it deemed frivolous claims by imposing an award of attorney's fees.[57]

In opposition, Turn argued that the barges were unseaworthy because the covers and doors were not airtight, that SCF Marine cannot delegate its duty to provide seaworthy barges, that the source of contamination cannot be confirmed, that Turn did not know that the barges contained LGMR, and that Turn did not violate its standing order with respect to the placement of the barges.[58] Turn urged that SCF Marine's contractual defenses were not applicable because the

---

[52] R. Docs. 57-1 at 10-11; 67 at 12-13.
[53] R. Doc. 59-1 at 11-13.
[54] *Id.*
[55] *Id.* at 12-13.
[56] *Id.* at 13-17.
[57] *Id.* at 17-20.
[58] R. Doc. 69.

contract was between SCF Marine and Supreme Rice, not Turn.[59] Finally, Turn argued that sanctions were not appropriate because its claims were not frivolous.[60]

This Court denied Turn's and Supreme Rice's cross-motions for summary judgment.[61] The Court specifically found that the barges were seaworthy, *i.e.*, fit for transport of the LGMR cargo, and delivered to Turn in good condition, and also that Turn had assumed, by virtue of its internal policy, a duty to avoid placing barges (at least, milled rice barges) within the fleet in a position (in proximity to coal barges) that presented a known risk to the cargo.[62] However, the Court could go no farther because there were disputed issues of material fact regarding whether Turn knew that the barges contained LGMR and whether the rice was contaminated by coal or coal-like dust from a nearby barge.[63]

In that same Order & Reasons, this Court granted SCF Marine's motion for summary judgment, holding that the contractual time bar applied to bar Turn's Rule 14(c) claims.[64] However, the Court declined to exercise its inherent authority to impose the sanctions against Turn that SCF Marine requested for Turn's having impleaded SCF Marine as a third-party defendant.[65]

On the eve of trial, Supreme Rice and Turn settled the main demand related to the damaged LGMR, leaving only SCF Marine's claim for attorney's fees remaining in the litigation.[66] As a result, and on the agreement of the parties, this Court cancelled the trial and entered a briefing schedule to try both the liability and quantum of SCF Marine's attorney's fees claims on submissions of the parties.[67]

---

[59] *Id.*
[60] *Id.* at 23.
[61] R. Doc. 88 at 11-13.
[62] *Id.*
[63] *Id.*
[64] *Id.* at 14.
[65] *Id.* at 14 n.72.
[66] R. Doc. 98.
[67] R. Doc. 99.

## II.   LAW & ANALYSIS

Under the American Rule, a prevailing litigant may not ordinarily recover either attorney's fees or nontaxable litigation expenses or costs from a loser absent a contractual or statutory fee-shifting provision. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 260 (1975) (attorney's fees); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (expenses and costs). This American Rule applies to maritime cases. *Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir. 2003). SCF Marine seeks to obtain an award of fees and costs against Supreme Rice pursuant to a contract and against Turn under this Court's inherent authority to sanction a party for pursuing frivolous litigation.[68]

---

[68] R. Doc. 100. The party requesting fees bears the burden of establishing the reasonableness of the fees and costs they request by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012). Moreover, Local Rule 54.2 requires a party seeking attorney's fees to "submit to the court a verified, contemporaneous report reflecting the date, time involved, and nature of the services performed." If the documentation is inadequate, the district court can use its discretion to reduce the award accordingly. *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986). SCF Marine did not submit bills or other documentation showing the date, time involved, and nature of services, but instead argues that its attorney's affidavit stating that it incurred $294,723.00 in attorney's fees and $11,203.30 in costs is sufficient proof of fees and costs under Missouri law. R. Doc. 112 at 3-4 (citing R. Doc. 100-6). The contract at issue is a maritime contract. Courts within the Fifth Circuit look to the federal lodestar analysis, not state law, as the appropriate basis for reviewing a fee request in a case involving a maritime contract. *See Int'l Marine, LLC v. FDT, LLC*, 2015 WL 914898, at *3 (E.D. La. Mar. 3, 2015); *Williams v. Traylor-Massman-Weeks, LLC*, 2013 WL 12228480, at *2 (E.D. La. Aug. 30, 2013), *adopted in relevant part*, 2013 WL 5603953 (E.D. La. Oct. 11, 2013); *A C Marine, Inc. v. Axxis Drilling, Inc.*, 2011 WL 1595438, at *2 (W.D. La. Apr. 25, 2011); *Chevron USA, Inc. v. Aker Mar., Inc.*, 2011 WL 999253, at *3-4 (E.D. La. Mar. 17, 2011), *aff'd*, 689 F.3d 497 (5th Cir. 2012); *Malin Int'l Ship Repair & Drydock, Inc. v. M/V Seim Swordfish*, 611 F. Supp. 2d 627, 634 (E.D. La. 2009), *aff'd*, 369 F. App'x 553 (5th Cir. 2010); *see also Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001). In calculating the appropriate fee under the lodestar analysis, a court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar determination is presumed reasonable, but may be adjusted upward or downward depending on the weight a court allots to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). SCF Marine did not submit the necessary documentation – time records – to support its claim for attorney's fees and costs under the lodestar method. After this deficiency was highlighted by Supreme Rice and Turn in opposition, SCF Marine offers in its reply brief to supplement its proof if the Court deems the affidavit inadequate. R. Doc. 112 at 10. In essence, recognizing its failure of proof, SCF Marine seeks a second bite at the apple. This Court will not allow it because all parties were on notice that both entitlement to and quantum of attorney's fees would be tried on their submissions and the record. R. Doc. 99; *see Western-Southern Life Assurance Co. v. Kaleh*, 879 F.3d 653, 667 (5th Cir. 2018) (holding that district court did not err by disallowing supplemental proof of attorney's fees when the initial proof was insufficient and party was on notice of need to submit sufficient proof). Thus, even if this Court were to find that an award of attorney's fees and costs to SCF Marine was warranted, the proof submitted by SCF Marine is inadequate and this Court would have discretion to reduce the award as it saw fit. *See Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) ("Absent a

9

**A. SCF Marine's Claim for Attorney's Fees Against Supreme Rice**

SCF Marine argues that it is entitled to an award of attorney's fees and costs from Supreme Rice under the parties' contract which provided that, in the event of Supreme Rice's breach of the contract, it would "hold harmless and fully indemnify and defend [SCF Marine] for any loss, damage, or additional expense resulting therefrom."[69] According to SCF Marine, Supreme Rice breached the contract by not rejecting and moving to dismiss the Rule 14(c) tender because the contract required Supreme Rice to warrant the barges' seaworthiness and required that any suit be brought within nine months after the loss.[70] SCF Marine claims that Supreme Rice refused to renounce the Rule 14(c) tender and prolonged its life hoping that it would eventually compel SCF Marine to contribute to settlement of the case. SCF Marine argues that Supreme Rice's actions – really, inaction – forced it to incur over $300,000 in attorney's fees and costs.[71]

SCF Marine's arguments are unpersuasive. By filing its motion to strike or dismiss the Rule 14(c) tender promptly after being impleaded, SCF Marine acknowledged that, as a third-party defendant to such a tender, it could assert any defenses available to it against either the plaintiff (Supreme Rice) or the defendant/third-party plaintiff (Turn). Indeed, early on, SCF Marine interposed a contractual defense when it sought to have the Rule 14(c) tender dismissed as having been brought in the wrong forum. There is no logical reason that SCF Marine could not have asserted the nine-month time bar at this same early juncture in the litigation. That contractual defense, like the forum-selection clause, was available to SCF Marine to use against both Turn and Supreme Rice from the outset. The defense is not particularly fact-dependent since the only

---

reliable record of the time expended on the prevailing claim, it is within the discretion of the district court to determine a reasonable number of hours that should have been expended in pursuing the claim on which the party prevailed.").
  [69] R. Doc. 100 at 10 (citing R. Doc. 59-6).
  [70] *Id.* at 5-12.
  [71] *Id.*

10

relevant fact (*viz.*, the date suit was brought) was evident on the face of the complaint and docket. And, as the other contracting party, SCF Marine was at least as aware of the defense as was Supreme Rice. Rather than assert this contractual defense at the earliest possible time, though, SCF Marine participated in lengthy discovery, most of it self-generated, running up hundreds of thousands of dollars in attorney's fees and costs, only to roll out its ace-in-the-hole time-bar defense in a motion for summary judgment on the eve of trial and then seek to blame Supreme Rice for not ending the litigation against SCF Marine sooner. SCF Marine clearly knew of this winning defense from the outset of its involvement in the case but chose to participate in discovery unnecessary to its dismissal on the basis of this defense. Supreme Rice cannot and should not be held accountable for an action that SCF Marine could, and should, have taken earlier on its own behalf. As such, this Court will not award attorney's fees and costs to SCF Marine from Supreme Rice.

### B. SCF Marine's Claim for Attorney's Fees Against Turn

SCF Marine seeks an award of attorney's fees and costs against Turn and its attorneys under the district court's inherent authority and 28 U.S.C. § 1927 for Turn's "frivolous" claims against SCF Marine. As noted by the Fifth Circuit, "[f]ederal courts have the inherent power to assess sanctions under certain circumstances, such as when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the very temple of justice." *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 134 (5th Cir. 2017) (quotations omitted). "In using its inherent power, a district court must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id.* (quotation omitted); *see World Fuel Servs. (Singapore) Pte Ltd. v. M/V Varesia*, 2019 WL 266302, at *3 (E.D. La. Jan. 18, 2019). Section 1927 provides that the district court can impose reasonable attorney's fees as a sanction against

any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

SCF Marine sought attorney's fees and costs against Turn in connection with its earlier motion for summary judgment.[72] This Court denied the request.[73] Nothing has changed: SCF Marine presents no evidence with its trial brief that was not presented, or could not have been presented, in connection with its summary-judgment motion. SCF Marine did not then and does not now convince this Court that the conduct of Turn, or its attorneys, in the course of the litigation warrants the imposition of any sanction. There is no indication that Turn acted vexatiously or pursued a frivolous claim. Indeed, throughout the litigation SCF Marine held the power to seek summary judgment on a contractual provision, but chose instead to pursue discovery that it knew was unnecessary to secure its ultimate victory.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that SCF Marine is not entitled to an award of attorney's fees and costs against either Supreme Rice or Turn.

New Orleans, Louisiana, this 19th day of October, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[72] R. Doc. 59-1 at 17-20.
[73] R. Doc. 88 at 14 n.72.